IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| QUENTIN R. ALEXANDER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 19-CV-0341-GKF-JFJ |
| CODY TRAILL, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment [Dkt. 20] filed by Defendant Cody Traill. Plaintiff Quentin Alexander did not file a response. Because undisputed facts in the summary-judgment record demonstrate that Alexander was incarcerated when he filed this 42 U.S.C. § 1983 civil rights action alleging a Fourteenth Amendment excessive-force claim against Traill and that Alexander failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a), the Court grants Traill's motion for summary judgment and dismisses Alexander's amended complaint.

**I.     Background**

Quentin Alexander commenced this action on June 24, 2019, by filing a 42 U.S.C. § 1983 civil rights complaint [Dkt. 1] against the Tulsa County Sheriff's Office (TCSO) and Cody Trail, a Tulsa County Sheriff's Deputy. Alexander purported to sue both defendants in their individual and official capacities and alleged that Deputy Traill "acted with malice intent and pursuant to policies and practices of" the TCSO when he used excessive force against Alexander in March

2019 by tasering Alexander while he was detained at the David L. Moss Criminal Justice Center (DLMCJC) in Tulsa, Oklahoma. [Dkt. 1, Compl., at 1-5.]¹

When Alexander filed the complaint, he was in the custody of the Arizona Department of Corrections. [Dkt. 1, Compl., at 1, 7.] As a result, his complaint was subject to preliminary screening under 28 U.S.C. § 1915A, a provision of the Prison Litigation Reform Act (PLRA). In an order [Dkt. 3] filed July 12, 2019, the Court screened the complaint, dismissed the TCSO as an improper defendant, determined that the complaint was subject to being dismissed, in part, for failure to state a claim, and construed the complaint as stating a plausible Fourteenth Amendment excessive-force claim against Traill, in his individual capacity.

Alexander filed an amended complaint [Dkt. 5] on July 31, 2019. At that time, Alexander was still incarcerated in an Arizona state prison. [Dkt. 5, Am. Compl., at 1, 9.] In September 2019, Alexander updated his address to reflect that he had been released from prison and provided the Court with a residential address in California. [Dkt. 8, Notice, at 1.]

Citing Fed. R. Civ. P. 12(b)(6), Traill moved to dismiss the amended complaint on December 17, 2019, alleging Alexander failed to state a claim on which relief could be granted. [Dkt. 16, Mot. to Dismiss, at 1.] In an order filed April 17, 2020, the Court granted the dismissal motion, in part, dismissed Alexander's official-capacity claim against Traill for failure to state a claim on which relief could be granted, and dismissed as moot his claims for declaratory judgment and injunctive relief. [Dkt. 17, Order, at 4-5.] The Court denied the dismissal motion, in part, as to the Fourteenth Amendment excessive-force claim asserted against Traill, in his individual capacity, and determined Alexander could proceed on his claims for compensatory, punitive and nominal damages. [Dkt. 17, Order, at 6-8.]

---

¹ For consistency, the Court's citations refer to the CM/ECF header pagination.

Traill filed an answer [Dkt. 18] to the amended complaint on May 1, 2020, and the Court entered a scheduling order [Dkt. 19] on May 6, 2020. Traill filed the instant motion for summary judgment [Dkt. 20] on August 17, 2020. Alexander did not file a response and did not seek additional time to do so. The motion for summary judgment is therefore ripe for adjudication.

**II.     Summary judgment standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine'" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

At the summary-judgment stage, the court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). And, "[i]n making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

**III.     Material Facts**

Unless otherwise noted, the following facts are undisputed for purposes of the instant motion.[2] Alexander was detained at the David L. Moss Criminal Justice Center (DLMCJC), in Tulsa, Oklahoma, from February 24, 2019, to March 15, 2019, following his arrest on an outstanding felony warrant issued by authorities in Arizona. [Dkt. 5, Am. Compl., at 7; Dkt. 20-1, at 2 (Def.'s Ex. A, Booking Summary).] Upon his admission to the DLMCJC, jail officials provided Alexander a copy of the Inmate Handbook, and Alexander signed a form acknowledging he was responsible for complying with the rules and procedures therein. [Dkt. 20-1, at 3 (Def.'s Ex. B, Acknowledgement of Receipt of Inmate Handbook).]

On March 1, 2019, medical personnel awakened Alexander at 4:30 a.m. so that he could take seizure medications. [Dkt. 20-1, at 9 (Def.'s Ex. D, Req. for Admis. No. 1.)] Alexander refused to take the medications. [Dkt. 20-1, at 9 (Def.'s Ex. D, Req. for Admis. No. 2).] About four hours later, Deputy Riley Breedlove, called for an escort because Alexander refused to go to the medical unit for wound care. [Dkt. 20-1, at 10 (Def.'s Ex. D, Req. for Admis. No. 5), 16

---

[2] As previously stated, Alexander did not file a response to the summary judgment motion. As a result, the Court deems the facts set forth in the motion undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e)(2); LCvR 56.1(c). In addition, some facts set forth in the motion are deemed admitted, under Fed. R. Civ. P. 36(a)(3), because Alexander failed to serve written answers or objections to Traill's properly served requests for admissions. [Dkt. 20, Mot. for Summ. J., at 6 n.1; Dkt. 20-1, at 8-13 (Def's Ex. D, Req. for Admis.), 28-33 (Def.'s Ex. L, Second Req. for Admis.).] Finally, because Alexander appears pro se, the Court includes facts drawn from his verified amended complaint, which the Court treats as an affidavit for purposes of the motion. *See Lantec, Inc., v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) ("A district court may treat a verified complaint 'as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56[(c)(4)].'" (quoting *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)). Under Rule 56(c)(4), an affidavit or declaration must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(c)(4). However, to the extent any allegations in the verified complaint "are merely conclusory," the Court disregards them. *Conaway*, 853 F.2d at 793.

(Def.'s Ex. F, Incident Report # 190001416), 17 (Def.'s Ex. G, Incident Report # 190001417), 21 (Def's Ex. I, Breedlove Aff.).] Deputy Breedlove heard Alexander threaten to fight anyone who tried to take him to the medical unit. [Dkt. 20-1, at 21 (Def.'s Ex. I, Breedlove Aff.).]

Deputy Traill, who was on escort duty, arrived at the pod and approached Alexander's cell. [Dkt. 20-1, at 18-19 (Def.'s Ex. H, Traill Aff.).] Alexander "jumped to his feet with his shirt off and began pacing back and forth." [Dkt. 20-1, at 10 (Def.'s Ex. D, Req. for Admis. No. 6), 19 (Def.'s Ex. H, Traill Aff.).] When Traill told Alexander to grab his shirt and walk to the medical unit, Alexander "became agitated and loud and threatened to fight" him. [Dkt. 20-1, at 10 (Def.'s Ex. D, Req. for Admis. No. 7), 19 (Def.'s Ex. H, Traill Aff.).] The door to Alexander's jail cell was open while Traill was interacting with Alexander. [Dkt. 20-1, at 11 (Def.'s Ex. D, Req. for Admis. No. 15), 19 (Def.'s Ex. H, Traill Aff.).]

When Traill repeated his order that Alexander walk to the medical unit, Alexander "questioned [Deputy] Traill . . . with no intent to provoke [him]," but refused to go to the medical unit. [Dkt. 5, Am. Compl., at 7; Dkt. 20-1, at 16 (Def.'s Ex. F, Incident Report # 190001416), 17 (Def.'s Ex. G, Incident Report # 190001417).] Alexander also refused Traill's repeated instructions to turn around and place his hands behind his back. [Dkt. 20-1, at 10 (Def.'s Ex. D, Req. for Admis. No. 9).] In response, Traill pulled out his taser, aimed it at Alexander, and threatened to use the taser. [Dkt. 5, Am. Compl., at 7; Dkt. 20-1, at 10 (Def.'s Ex. D, Req. for Admis. No. 10.]

Alexander told Traill that he had experienced a seizure less than eight hours ago and that Traill should not taser him because of his medical condition. [Dkt. 5, Am. Compl., at 7; Dkt. 20-1, at 16 (Def.'s Ex. F, Incident Report # 190001416).] Alexander remained "openly hostile toward Deputy Traill," refused to turn around so that Traill and Breedlove could restrain him despite

5

repeated orders to do so, and "balled [his] fists and raised [his] hands above [his] waist in a threatening manner more than once." [Dkt. 20-1, at 10 (Def.'s Ex. D, Req. for Admis. Nos. 9, 11, 12).] Believing that Alexander posed a threat to him and was creating a security risk, Traill deployed his taser, and the taser's probes struck Alexander in the chest. [Dkt. 5, Am. Compl., at 7; Dkt. 20-1, at 17 (Def.'s Ex. G, Incident Report # 190001417), 19-20 (Def.'s Ex. H, Traill Aff.).]

Alexander fell to the ground and experienced "tremendous pain and suffering and fear." [Dkt. 5, Am. Compl., at 7; Dkt. 20-1, at 16 (Def.'s Ex. F, Incident Report # 190001416).] Deputy Traill and Deputy Breedlove then restrained Alexander with handcuffs, picked him up, and escorted him as he walked to the medical unit. [Dkt. 20-1, at 12 (Def.'s Ex. D, Req. for Admis. No. 26), 16 (Def.'s Ex. F, Incident Report # 190001416), 17 (Def.'s Ex. G, Incident Report # 190001417).] A nurse who examined Alexander immediately after the tasering incident reported that Alexander was "agitated but cooperative." [Dkt. 20-1, at 23 (Def.'s Ex. J, Patient History).]

Following his post-tasering visit to the medical unit, Alexander was "rehoused to restrictive housing." [Dkt. 20-1, at 17 (Def.'s Ex. G, Incident Report # 190001417).] On March 5, 2019, Alexander visited the medical unit and denied any health conditions beyond his history of seizures. [Dkt. 20-1, at 12 (Def.'s Ex. D, Req. for Admis. No. 28), 25 (Def.'s Ex. J, Patient History).]

The TCSO has established administrative procedures for inmates housed at the DLMCJC to submit requests and grievances. [Dkt. 20-1, at 4-7 (Def.'s Ex. C, Inmate Handbook)]. Generally, "[r]equests and grievances will be filled out and completed on the inmate kiosk system." [Dkt. 20-1, at 5 (Def.'s Ex. C, Inmate Handbook).] "If a specific condition exists that prevents [an inmate] from utilizing the kiosk, a paper form may be filled out." [Dkt. 20-1, at 5 (Def.'s Ex. C, Inmate Handbook).] An inmate must sequentially complete a six-step request and grievance process in an attempt to resolve the inmate's issue by (1) contacting the pod officer,

(2) asking to speak to supervisor, (3) submitting a kiosk request (or a paper request, if necessary), (4) submitting an appeal of the request, (5) submitting a grievance, including the request number in steps 3 and 4, and providing a detailed explanation of the grievance issue and attempts to resolve it, and (6) submitting an appeal of the grievance.[3] [Dkt. 20-1, at 6 (Def.'s Ex. C, Inmate Handbook).] After completing step four, the inmate may initiate a grievance for specific reasons, including violations of the inmate's civil, constitutional or statutory rights. [Dkt. 20-1, at 6 (Def.'s Ex. C, Inmate Handbook).] The inmate must file a grievance within seven days of the alleged incident and the time for filing the grievance begins on "the date the problem or incident became known." [Dkt. 20-1, at 7 (Def.'s Ex. C, Inmate Handbook).]

Alexander submitted a request for further investigation into the March 1, 2019, tasering incident on March 13, 2019. [Dkt. 5, Am. Compl., at 8; Dkt. 18, Answer, at 3.] Two days later, on March 15, 2019, Alexander was released from the DLMCJC and taken into custody by officials with the Arizona Department of Corrections. [Dkt. 5, Am. Compl., at 8; Dkt. 18, Answer, at 3; Dkt. 20-1, at 2 (Def.'s Ex. A, Booking Summary).]

Alexander was incarcerated by the Arizona Department of Corrections when he filed his original complaint in June 2019 and when he filed his amended complaint in July 2019. [Dkt. 1, Compl., at 1; Dkt. 5, Am. Compl., at 1.] In his amended complaint, Alexander states, under penalty of perjury, that he has "been having chest pains since the [tasering] incident occurred" and that he did not have those pains before the incident. [Dkt. 5, Am. Compl., at 8.] But he admits he did not suffer any injury or physical harm from the tasering incident and that he has not incurred any medical expenses for treatment related to the tasering incident. [Dkt. 20-1, at 11 (Def.'s Ex. D,

---

[3] If the inmate's issue arises from an incident involving the pod officer, the inmate may begin the process at step two by asking to speak to a supervisor. [Dkt. 20-1, at 6 (Def.'s Ex. C, Inmate Handbook).]

Req. for Admis. No. 25), 30 (Def.'s Ex. L, Second Req. for Admis. No. 6).] In his request for relief, Alexander seeks (1) compensatory damages of $80,000 or an amount to be determined, (2) punitive damages "in a[n] amount the court deems appropriate," and (3) all costs and fees to be paid by Traill. [Dkt. 5, Am. Compl., at 6, 8.]

## IV. Discussion

Traill moves for summary judgment on four grounds: (1) Alexander failed to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a), before filing this action, (2) Traill's use of force was reasonable under the circumstances, (3) Traill is entitled to qualified immunity, and (4) Alexander is not entitled to any damages. [Dkt. 20, Mot. for Summ. J., at 2.] For the following reasons, the Court finds and concludes that Traill is entitled to summary judgment on the first ground and thus declines to address his remaining arguments.

### A. PLRA Exhaustion

Traill first contends he is entitled to summary judgment on the Fourteenth Amendment excessive-force claim because Alexander failed to exhaust available administrative remedies before filing this civil action, as required by the PLRA. [Dkt. 20, Mot. for Summ. J., at 12-15.]

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies if the plaintiff is a prisoner at the time of the filing of the lawsuit, regardless of whether he or she is released from custody while the litigation is pending. *May v. Segovia*, 929 F.3d 1223, 1228 (10th Cir. 2019). Also, this exhaustion requirement is "mandatory," *Jones v. Bock*, 549 U.S. 199, 211 (2007), and it "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *see also Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (stating that § 1997e(a)'s "mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account").

But "the PLRA contains its own, textual exception to mandatory exhaustion" because it only requires exhaustion of "available" administrative remedies. *Blake*, 136 S. Ct. at 1858. Thus, a prisoner "need not exhaust unavailable ones." *Id.* In *Blake*, the United States Supreme Court explained that administrative remedies are "unavailable" if an administrative procedure either (1) "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," or (2) "exists to provide relief, but no ordinary prisoner can discern or navigate it," and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 136 S. Ct. at 1859-60; *see also Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (stating that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust").

When administrative remedies are available, the PLRA "requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion is determined on a claim-by-claim basis, *May*, 929 F.3d at 1227-28, and "[a]n inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules,'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (unpublished)[4] (quoting *Ngo*, 548 U.S. at 90). Because "substantial compliance is insufficient" to

---

[4] The Court cites this unpublished decision as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

9

satisfy the PLRA's exhaustion requirement, "'[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a [federal] claim under the PLRA for failure to exhaust administrative remedies.'" *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

   B.   **Analysis**

To determine whether Traill is entitled to summary judgment on his defense that Alexander failed to comply with the PLRA's mandatory exhaustion requirement, the Court must consider three questions: *First*, whether the PLRA applies to Alexander; *Second*, if so, whether administrative remedies were available to Alexander; and *Third*, if so, whether Alexander properly exhausted his excessive-force claim by pursuing available administrative remedies. Viewing the material facts in Alexander's favor, none of these questions presents a genuine issue for trial.

First, there is no dispute that Alexander was incarcerated in the Arizona prison system when he filed his original complaint and when he filed his amended complaint. In both complaints, Alexander asserted that Traill violated the Fourteenth Amendment by using excessive force against Alexander while he was detained at the DLMCJC. It is also undisputed that the Arizona Department of Corrections released Alexander from custody sometime after he filed his amended complaint. Because the undisputed facts show that Alexander was a "prisoner" within the meaning of the PLRA when he filed his original complaint seeking relief on the excessive-force claim, there is no genuine dispute as to whether the PLRA's exhaustion requirement applies. *May*, 929 F.3d at 1227-28; *Nussle*, 534 U.S. at 524, 532.

Second, Alexander fails to controvert facts presented by Traill showing that administrative remedies were available to Alexander. *See May*, 929 F.3d at 1234 ("Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the

defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'"). As previously discussed, undisputed facts in the summary-judgment record show that the TCSO has a six-step procedure for inmates to submit requests and grievances. Alexander acknowledged receipt of the Inmate Handbook that lays out the step-by-step process in fairly simple terms. In his amended complaint, Alexander asserts that "he had no access to the grievance procedure because it's done by kios[k] and [he] was in the hole," and that he "made every attempt to go threw [sic] the appropriate grievance process but [was] incapable of doing so due to being taken to the hole." [Dkt. 5, Am. Compl., at 8.] The record supports Alexander's assertion that he was placed in the segregated housing unit (i.e., "the hole") after the tasering incident. But, as Traill argues, the TCSO's grievance procedures expressly provide that an inmate may request a paper form to file a request or grievance "[i]f a specific condition exists that prevents [the inmate] from utilizing the kiosk system." [Dkt. 20, Mot. for Summ. J., at 14; Dkt. 20-1, at 5 (Def.'s Ex. C, Inmate Handbook).] Moreover, Alexander admits that he "had access to paper grievance forms upon request from DLM personnel even while [he was] being held in Segregated Confinement" and that he did not request a paper form. [Dkt. 20-1, at 29 (Def.'s Ex. L, Second Req. for Admis. Nos. 2, 3, 4).] On this record, no reasonable juror could find in Alexander's favor on the question of whether administrative remedies were available.

Third, and likewise, no reasonable juror could find in Alexander's favor on the question of whether he properly exhausted available administrative remedies. The undisputed facts show that Alexander "put in a request to further investigate the [tasering incident]" on March 13, 2019, two days before he was released from the DLMCJC and taken into custody by the Arizona Department of Corrections. [Dkt. 5, Am. Compl., at 8; Dkt. 18, Answer, at 3.] Even assuming a request for an investigation constitutes evidence that Alexander initiated the TCSO's six-step process, other

11

evidence supports Traill's assertion that Alexander failed to successfully complete that process. To start, Alexander's attempt to begin the administrative process was untimely. He filed his request for an investigation 12 days after the tasering incident. But filing a request is the third step of the process, and the TCSO's administrative procedure gave him only seven days, beginning March 1, 2019, to complete the fifth step by filing a grievance. Further, Alexander admits that he did not file a grievance within the seven-day window, and other evidence shows that he filed no grievance at any time before he was released from the DLMCJC. [Dkt. 20-1, at 30 (Def.'s Ex. L, Second Req. for Admis. No. 5), 34 (Def.'s Ex. N, Turley Aff.).] Because the undisputed facts show that Alexander did not finish the TCSO's six-step process, no reasonable juror could find that he properly exhausted available administrative remedies. *See Fields*, 511 F.3d at 1112 (10th Cir. 2007).

## V.   Conclusion

The undisputed facts support Traill's assertion that Alexander's excessive-force claim is barred because Alexander failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). The Court therefore grants Traill's motion for summary judgment and dismisses the amended complaint, without prejudice,[5] as to all claims raised therein.[6]

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

---

[5] "Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (emphasis in original).

[6] The only plausible § 1983 claim in the amended complaint is the Fourteenth Amendment excessive-force claim Alexander asserts against Traill in his individual capacity. Alexander's failure to exhaust available administrative remedies as to that claim necessarily precludes his claim for monetary damages arising from the alleged use of excessive force. Consequently, the Court dismisses the amended complaint in its entirety.

1. Traill's motion for summary judgment [Dkt. 20] is **granted**.

2. The amended complaint [Dkt. 5] is **dismissed without prejudice** as to all claims raised therein.

3. This is a final order terminating this action.

**DATED** this 25th day of January 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE